### E. A. McELFRESH v. STATE OF FLORIDA

9 So. (2nd) 277                                        Division A
July 17, 1942

R. G. Tittsworth, for appellant.

J. Tom Watson, Attorney General, and Lewis W. Petteway, Assistant Attorney General, for appellee.

ADAMS, J.:

This is an appeal from a judgment of conviction against appellant as a dealer in securities under the Securities Act of 1939. The material part of the agreement is as follows:

"Whereas, the said McElfresh Railroad Operating System for Terminal and Yard Operation has been carefully studied by Railroad Officials and Statesmen who have highly recommended the said McElfresh Railroad Operating System for Terminal and Yard Operation as an improvement over the System now employed by the Railroads, and

Whereas, the said party of the first part is desirous of securing funds for organization expense and for the purpose of selling or renting or promoting of said System for a profit to any other persons, firms or corporations, and

Whereas, the said party of the second part is desirous of purchasing an undivided interest in and to said System, being fully cognizant of the plans and methods of operation, after having examined said System:

Now, Therefore, in consideration of the mutual covenants herein expressed, the parties hereto agree as follows: to wit:

1. Said party of the second part does hereby "pay to said party of the first part, the sum of Fifteen Hundred ($1500.00) Dollars, the receipt of which is

hereby acknowledged, for an undivided one half of one percent (0½%) interest in said system.

2. And the said party of the first part shall utilize said monies as he sees fit and in his sole discretion, toward the selling or renting or promoting of said System, including all expenses in connection with or incident thereto, such as attorney's fees, traveling expenses and so forth, and including organization expenses.

3. Said party of the first part shall have the complete management of said System in his own name, anything to the contrary notwithstanding, said System having been rendered through the Patent Office and is copyrighted and trademarked as of March 10, 1938.

4. Said party of the first part further agrees to devote his entire time or so much thereof as may be necessary to protect said patent and copyright as provided by law; and will assign an undivided interest in and to said party of the second part, as hereinabove mentioned, in said System, together with all rents, issues and profits, according to the ratio of his share, when sold, leased, rented or put into operation.

5. It is expressly agreed and understood that this Agreement shall be construed as a Joint Venture Account, and no other agreements, representations or covenants shall be binding on either of the parties, except as are incorporated herein, anything to the contrary notwithstanding.

6. It is further agreed and understood that the said party of the second part shall not assign, set over, or transfer this Contract to any person, firm or corporation, without the express written consent of said party of the first part.

7. Said party of the first part shall keep a full and complete record of all expenditures to be made herein, and said monies shall be used only for the purpose herein expressed."

Was the contract a "security" as defined by Section I, Chapter 19190, General Laws of 1939, which reads:

" 'Security' shall include any note, stock, Treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation, whiskey warehouse receipt, or other commodity warehouse receipt, or right to subscribe to any of the foregoing, certificates of interest in a profit-sharing agreement, certificate of interest in an oil, gas, petroleum, mineral or mining title or lease, or the right to participate therein, collateral trust certificate pre-organization certificate, pre-organizational subscription, or any transferable share, investment contract, or beneficial interest to property, profits or earnings, interest in or under a profit sharing or participation agreement or scheme, or any other instrument commonly "known as a security; including an interim or temporary bond debenture, note, certificate, or receipt for a security or for subscription to a security."

This is not a case of the right of the owner of property to dispose of same. As we view the agreement of sale, the conveyance was made subject to certain restrictions and conditions the effect of which was to invest the vendee's capital in an enterprise which was to remain in the control of the vendor. The evident purpose of the vendee was to reap a profit from her investment. The agreement clearly shows the extent of the profit was to be guaged by efforts of the vendor. These are determinative factors

as to whether the agreement is a security within the contemplation of the statute.

Statutes of this character are upheld under the police power of the State. Their purpose is to protect the public against fraud and the statute will be given a broad and liberal interpretation to effectuate the purpose. Of necessity no definition of a security can be given to fit all cases. The thing sold will in each case be examined to determine if it falls within the purview of the statute. State v. Whitaker, et al., 118 Ore. 656, 247 Pac. 1077; State v. Swenson 172 Minn. 274, 215 N.W. 177; People v. Shafer, 130 Cal. App. 74, 19 Pac. (2nd) 861. See also notes cited in 54 A.L.R. 503, and 87 A.L.R. 74.

The judgment is affirmed.

BROWN, C. J., WHITFIELD and BUFORD, JJ., concur.