**ROYAL JEWELERS, Inc., Plaintiff-Appellee, v. TANNER and VICTORY MOTOR EXPRESS, Inc., Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 2170. Decided April 10, 1952.

Shaman, Winer, Shulman & Ziegler, Dayton, for plaintiff-appellee.

William A. Swaney, Dayton, for defendant-appellant, Victory Motor Express, Inc.

**OPINION**

By HORNBECK, PJ:

The appeal is prosecuted by the defendant-appellant, Victory Motor Express, Inc. The judgment under review was entered by the Municipal Court of the City of Dayton, Ohio, on behalf of the plaintiff and against defendant-appellant.

The cause of action was predicated upon a check drawn upon The Farmers Bank, New Lebanon, Ohio, the maker of

which was defendant-appellant, payable to Maynard Tanner who endorsed the check to plaintiff. The Statement of Claim alleges that:

"Payment of said check was duly demanded at the bank upon which it was drawn at maturity but same was not paid because the defendant, Victory Motor Express, Inc. had the payment stopped on same."

Default judgment was also taken against defendant Maynard Tanner.

There is no dispute in the evidence. The facts developed disclosed that there was no consideration for the check although this was not known when it was drawn by the duly authorized agent of the defendant. However, Tanner received value from the plaintiff when he had it cashed and if the check is a negotiable instrument the plaintiff was a holder in due course. Prior to the time of its presentment for payment, the maker had stopped payment on the check. Thereafter the endorsee made demand for payment both upon appellant and upon Tanner. Payment being refused, the action was instituted. As we understand the contention of the defendant, the determinative question presented is whether the check here under consideration was a negotiable instrument.

It is further developed that the check was cashed by the plaintiff on the day that it was drawn and Tanner endorsed it on that day, applying some of the proceeds on an old account, some on a purchase made at the time and receiving the balance in cash. Four days after the check was given, the maker instructed the bank not to pay it, and when the endorsee presented it to the bank upon which it was drawn, payment was refused.

We shall not labor the question nor attempt to cite extended authorities because, we believe that, it is clearly determined by the applicable and controlling sections of the Negotiable Instruments Act.

**Sec. 8290 GC** defines a check:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this division applicable to a bill of exchange payable on demand apply to a check."

**Sec. 8231 GC** defines a bill of exchange as:

"an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."

A bill of exchange and a check are included in the term "commercial paper." 10 C. J. S. 406. A check is a complete negotiable instrument. Kullberg Mfg. Co. v. Smith, et al. Affirmed. 216 N. W. 249. This check was due and payable, on demand, at the bank upon which it was drawn.

**Sec. 8165 GC** provides:

"By making it, the maker of a negotiable instrument engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse." and §8166 GC provides:

"By drawing the instrument the drawer admits the existence of the payee and his then capacity to indorse; and engages that on due presentment the instrument will be accepted and paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who is compelled to pay it."

In **Cummings v. Kent, 44 Oh St 92** it is held that:

"By the act of drawing and issuing a bill of exchange, the drawer contracts that it will be accepted and paid according to its terms, and that if it is not he will pay it."

A holder in due course is defined by §8157 GC. The plaintiff here meets all of the requirements of the statute as to a holder in due course. The second condition in the section is applicable "that he became the holder of it before it was over due and without notice that it previously had been dishonored, if such was the fact."

The extent to which an indorsee of a negotiable instrument in good faith will be protected is illustrated by the syllabus to the **Miller Bros. Star Shoe Co. v. Griffiths, 11 Oh Ap 277;**

"One who purchases of the payee in good faith by indorsement and delivery for value, before maturity, a negotiable promissory note without notice of any infirmity in the instrument or defect in the title, is a holder in due course, even though a receiver of the property of the payee had been appointed and qualified, the purchaser having no knowledge of that fact, and the receiver never having been in actual possession of the instrument."

We have examined the cases cited by appellant but find that they are not applicable to the factual development here. Some of them make differentiation between checks and other types of negotiable instruments. Some of them treat of the right of the maker as between him and the payee to stop payment on a check. **Speroff v. First Central Trust Co., 149 Oh St 415; Charles Conn, Jr., v. Walton, 46 Oh St 195.** One

relates to the liability of a bank which honored a check after it had been notified not to pay it. **The C. H. & D. R. R. Co. v. Metropolitan National Bank, 54 Oh St 60.** No one of them is in derogation of the express terms of the sections of the Code which we have quoted.

There is no error in the judgment from which the appeal is taken in this case.

It will be affirmed.

WISEMAN and MILLER, JJ, concur.