732 P.2d 1389

**Regina M. WHITE, Michael White and Charles Rose, Plaintiffs-Appellants,**

v.

**Roy H. SOLOMON, et al., Defendants-Appellees.**

**No. 8289.**

Court of Appeals of New Mexico.

Dec. 30, 1986.

Certiorari Denied Feb. 2, 1987.

A. Patrick Maynez, Messina, Madrid & Maynez, P.A., Albuquerque, for plaintiffs-appellants.

Richard B. Addis, Albuquerque, for defendants-appellees.

## OPINION

NORMAN HODGES, District Judge.

Plaintiffs appeal from a denial of their motion for summary judgment to rescind the sale of a corporation and the entry of judgment for defendants. We affirm the trial court on two grounds.

Roy H. Solomon, Jeffrey A. Solomon, Burt Glucksman and Ralph Kaplan (defendants) sold all of their common stock in R.S., Incorporated, a New Mexico corporation (R.S., Inc.), to Regina M. White, Charles F. Rose and Michael H. White (plaintiffs). R.S., Inc. owned a business known as Friar's East at 1200 Wyoming Blvd., N.E. in Albuquerque including a liquor license, furniture, fixtures, inventory and a lease on real estate which was binding on R.S., Inc.

Plaintiffs paid $100,000 down and the balance of $450,000 was payable in certain terms specified in the agreement dated June 13, 1979. A commission, on the sale of the business, was paid to a realtor.

In June, 1979, new shares of R.S., Inc. stock were issued by plaintiffs Charles F. Rose, president, and Regina M. White, secretary, to the new owners, Charles F. Rose, Regina M. White and Michael H. White. In March, 1981, plaintiffs filed a complaint against defendants claiming a violation of the New Mexico Securities Act and requesting a rescission of their purchase and return of all money paid to defendants.

Plaintiffs then filed a motion for summary judgment which was heard by the trial court and, by order filed November 26, 1984, the trial court found and ruled that the transaction (sale of common stock) between defendants and plaintiffs was incidental to the sale of a business and therefore the registration requirements of the New Mexico Securities Act did not apply.

## ISSUES

Plaintiffs raise three issues on appeal: (1) whether the sale of all of the R.S., Inc. stock by defendants to plaintiffs complies with the exemption under NMSA 1978, Section 58-13-30(J); (2) whether the stock sale is an isolated transaction under NMSA 1978, Section 58-13-30(A); and (3) whether the "sale of business" exception exists in New Mexico so as to relieve a seller of stock from the requirements of the New Mexico Securities Act.

## ISSUE I

Section 58-13-30(J), as it existed in 1979, provides in pertinent part that an exempt transaction includes:

J. [T]he issuance and sale by any corporation organized under the laws of this state of its securities at a time when the number of security holders does not, and will not in consequence of the sale, exceed twenty-five and:

(1) the seller reasonably believes that all buyers are purchasing for investment; and

(2) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer[.]

Here, R.S., Inc. did not issue and sell stock in June, 1979. After the sale of all stock in R.S., Inc. by defendants to plaintiffs, R.S., Inc., through its new officers, plaintiffs, issued new stock. Since

defendants never issued stock to plaintiffs, the Section 58–13–30(J) exemption cannot apply to this case. Thus, we agree with plaintiffs as to the inapplicability of this exemption. However, this does not affect our affirmance of the trial court since we find the transaction is exempted on two other grounds.

## ISSUE II

Plaintiffs argue in their second issue that, in light of surrounding circumstances, defendants' sale of the corporation was not an isolated transaction. Plaintiffs offered evidence that in November, 1979, five months after the transaction between the parties, defendant Roy Solomon formed another corporation called Friar's Inc. which purchased Victor's Good Times Lounge in Albuquerque and renamed it Friar's North. Solomon sold all outstanding stock in Friar's Inc. in October, 1980. This stock was not registered with the New Mexico Securities Bureau. The purchasers then sold part of their stock to other people to finance the purchase. Plaintiffs contend these subsequent events constitute a series of stock sales and, when considered with defendants' June sale to plaintiffs, denote a course of successive transactions and not an isolated transaction which would be exempt from the Act. We disagree.

In Parnall and Ticer, *A Survey of the Securities Act of New Mexico,* 2 N.M.L. Rev. 1, 37–38 (1972), the authors state:

A non-issuer may sell unregistered securities in "isolated transactions." As the Act does not define the term "isolated," the exemption is somewhat vague. The present New Mexico Commissioner has construed the term as inapplicable to a planned sale to two persons, and other states have similarly limited the exemption to from anywhere from two to five contemporaneous transactions.

We believe the term "isolated transaction" is not equivalent to "single transaction." The mere fact that defendants sold two incorporated businesses in separate transactions does not require a determination that defendants have brought themselves within the requirements of the New Mexico Securities Act. *See* 69 Am.Jur.2d, *Securities Regulation-State* § 79 (1973). *See also* Note, *The Paper Trail to Jail,* 11 N.M.L.Rev. 255 (1980–81).

In *State v. Sheets,* 94 N.M. 356, 610 P.2d 760 (Ct.App.1980), we noted that "isolated" was not defined in our Securities Act and we utilized its ordinary meaning. We defined an isolated transaction as one that is "unique; occurring alone or once, sporadic; not likely to recur." *Id.* at 365, 610 P.2d at 769. Because of the repetitive issuance of promissory notes and the dates involved, we determined that the transactions in *Sheets* could not be considered isolated transactions and the exemption did not apply. *Id.* The facts in this case, however, differ. The transfer of stock by defendants to plaintiffs in June, 1979, should be governed by the facts surrounding that sale. The sales were not connected in any way. The formation of another lounge-restaurant corporation and the sale of its stock some sixteen months later does not amount to a *series* of transactions by defendants that would cause the 1979 sale to be governed by the New Mexico Securities Act. The sale of stock by defendants to plaintiffs was an isolated transaction exempt from the Act. For the Act to apply, the transactions must have some tangible connection to one another, more than just the same seller. *Sheets* did not make this distinction and to the limited extent this broader approach conflicts with *State v. Sheets, Sheets* is modified.

## ISSUE III

We also affirm the trial court by virtue of the "sale of business" exception. The purpose of securities laws is generally held to be the protection of the public from various methods of deceit and fraud in the sales of securities, not the regulation of commercial transactions. *See McClure v.*

*First National Bank of Lubbock, Texas,* 352 F.Supp. 454 (N.D.Tex.1973), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *McElfresh v. State,* 151 Fla. 140, 9 So.2d 277 (1942).

In a case similar to the one at bar, the Tenth Circuit Court of Appeals held that a transaction, in which plaintiff bought a liquor store and, as an indicia of ownership, received 100% of the stock of the company owning the store, was not a "security transaction" within the purview of federal securities law. *Chandler v. Kew, Inc.,* 691 F.2d 443 (10th Cir.1977). We believe the circuit court's analysis is applicable in the instant case. Defendants argue, and we agree, that although the *Sheets* case stands for the proposition that New Mexico will not follow federal decisions as to the definition of "security" or "commercial paper" because of the difference in wording of the federal and state definitions, it does not stand for the proposition that New Mexico will ignore the laws of other states or the federal cases in dealing with the economic realities of the business world. To read *Sheets* too narrowly is to render useless its utility.

In the instant case, also, the transfer of stock was merely an indicia of ownership. Plaintiffs' purchase was, in reality, a purchase of the entire business. *Cf. Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The New Mexico Securities Act was never intended to govern this type of situation.

In sum, not only is the sale by defendants exempted from the New Mexico Securities Act by the isolated transaction exemption but, also, the sale represented an exception to the Securities Act since it was the sale of a business.

Affirmed.

IT IS SO ORDERED.

GARCIA and FRUMAN, JJ., concur.