This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.  **NO. 29,664**

**MICHAEL MARTIN MORALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

This case requires us to determine whether the district court erred in denying a jury instruction on a lesser included offense to the crime of aggravated assault on a peace officer pursuant to a stipulated agreement made between the prosecutor and Defendant before trial. We reverse Defendant's conviction of aggravated assault on a peace officer because we conclude that the stipulated agreement did not preclude Defendant from requesting an instruction on resisting, evading or obstructing an officer, and the district court erred in denying an instruction on that lesser included crime. We affirm on the remaining issues.

**BACKGROUND**

On November 16, 2007, Officer Jordan Hengst was driving behind a vehicle operated by Defendant when he noticed that the registration sticker on the license plate was covered by a piece of metal. He activated his emergency lights as a signal for Defendant to pull over, but Defendant turned a corner and proceeded to a stop sign, failed to stop, and started to accelerate. Officer Hengst engaged his emergency siren, and Defendant accelerated away at a speed of approximately 45 to 60 miles per hour. Defendant continued driving and turned on a few other streets when his vehicle fish-tailed out of control. Officer Hengst watched it spin out and make a 180 degree turn in the street. When the vehicle stopped, it was facing toward Officer Hengst. Defendant again accelerated and drove the vehicle toward Officer Hengst's lane of

traffic. Officer Hengst was afraid that Defendant was going to run into him head on. Officer Hengst swerved off the road, and as Defendant drove passed him, he almost hit Officer Hengst's patrol unit.

Officer Hengst turned his car around and watched as Defendant's car ran two more stop signs and made two turns at intersections. Officer Hengst continued following Defendant and observed Defendant turn again. After this turn, the officer lost sight of Defendant's vehicle for a moment. Officer Hengst then made the same turn and came upon a corner where he saw that Defendant's vehicle had crashed into the curb. No one was inside the vehicle.

Officer Hengst located Defendant running down an alley. He yelled for him to stop, but Defendant refused and kept running. A second officer caught up to Defendant and forced him onto the ground while Officer Hengst handcuffed Defendant. Defendant was transported to a detention center, where he admitted to having consumed alcohol earlier, smelled of liquor, failed sobriety tests, and was arrested for DWI.

After obtaining a search warrant, another officer searched Defendant's vehicle and found some marijuana in the ashtray. After testing blood samples taken from Defendant and the substance found in his car, the state laboratory division determined that Defendant had been impaired when he was driving during the incident.

Defendant was charged with numerous counts, including a felony charge of aggravated assault on a peace officer, in violation of NMSA 1978, Section 30-22-22 (1971), driving under the influence of intoxicating liquor and drugs, in violation of NMSA 1978, Section 66-8-102(A) (2007) (amended 2010), and possession of marijuana, in violation of NMSA 1978, Section 30-31-23 (2005) (amended 2011). On the morning of the first day of trial, the prosecutor verbally offered to dismiss a number of the charges in exchange for an agreement that Defendant would not request a lesser included offense instruction for the felony charge. The discussion leading up the agreement spanned a number of minutes, and there was some ambiguity about what was actually agreed upon. During various points in the conversation, the prosecutor made broad statements that Defendant would not seek a step-down from the charge of aggravated assault, but at other points he specifically stated that Defendant would forego requesting an instruction on the particular lesser included offense of assault on a peace officer, as defined by NMSA 1978, Section 30-22-21 (1971). Without clarifying whether the agreement was to cover any lesser included instruction or only the lesser included offense of assault on a peace officer, defense counsel said that he thought the defense could agree to the stipulation.

At the close of trial, Defendant proffered a jury instruction on "resisting, evading, or obstructing an officer," as defined by NMSA 1978, Section 30-22-1

(1981), as a lesser included offense of aggravated assault on a peace officer under Section 30-22-22. The district court denied Defendant's requested lesser included offense instruction on the crime of resisting, evading, or obstructing an officer, concluding that the stipulation made the day before covered all lesser included offenses.

The jury found Defendant guilty of aggravated assault on a peace officer. Defendant appeals that conviction.

**DISCUSSION**

**The Stipulated Agreement Between Defendant and the Prosecutor Did Not Preclude an Instruction on Resisting, Evading, or Obstructing an Officer**

Defendant contends that the district court erred when it denied him an instruction on the lesser included offense of resisting, evading, or obstructing an officer, under Section 30-22-1. The State counters that Defendant stipulated that he would not seek an instruction on the lesser included charge of aggravated assault on a peace officer in exchange for the dismissal of a number of the charges against him. We review the district court's denial of the jury instruction based on its interpretation of the stipulation de novo because stipulations are interpreted by the same rules as contracts, and we review the interpretation of a contract de novo. *See Hill v. Matthews*, 76 N.M. 474, 476, 416 P.2d 144, 145 (1966) (stating that there was "a stipulation, or contract, between the parents"); *Mueller v. Sample*, 2004-NMCA-075,

5

¶ 8, 135 N.M. 748, 93 P.3d 769 ("The interpretation of a contract is an issue of law that we review de novo.").

"[S]tipulation[s] must be given a fair and reasonable construction in order to effect the intent of the parties. To seek the intention of the parties, the language should not be so construed as to . . . constitute a waiver of a right not plainly intended to be relinquished." *Crabtree v. Measday*, 85 N.M. 20, 22, 508 P.2d 1317, 1319 (Ct. App. 1973). Because the agreement in this case was not reduced to writing, which might have clarified what was stipulated to by the parties, we look to the whole record to interpret the agreement. The question that we must answer is whether the agreement was that Defendant would not seek *any* lesser included offense instructions or whether he would not request a lesser included instruction on the particular offense of assault on a peace officer only.

At a hearing on the morning of the first day of trial, the prosecutor and Defendant came to an agreement that the prosecutor would dismiss several of the charges against Defendant if Defendant would agree to not request an instruction on a lesser included offense of aggravated assault on a peace officer. Although early in the hearing the prosecutor made broad statements that he was seeking a stipulation from Defendant that he would not seek a lesser included instruction for the charge of aggravated assault on a peace officer, the prosecutor later clarified his position by

6

specifically referring to assault upon a peace officer, under Section 30-22-21, as the lesser included offense that he was concerned about. The prosecutor stated that he thought that, under the facts of this case, the jury would either think that an assault occurred and that it was aggravated or that no assault occurred; therefore, he saw no reason in requiring the jury to "split hairs" or "dirty this whole thing up by getting into step-downs."

After further discussion about the facts the prosecutor thought supported different charges, and after clarifying that the stipulation would not affect Defendant's right to argue that Defendant had not intended to use the car as a deadly weapon, the prosecutor asked whether he could "get a stipulation to not seek the lesser included" noting that he had given up a lot and wanted to get to the "meat of the matter." Defense counsel then stated, "Yeah, I think we can agree to that."

At the close of trial the following day, Defendant requested an instruction on resisting, evading, or obstructing an officer, pursuant to Section 30-22-1. The district court stated that it thought an agreement had been made the day before, relating to lesser included instructions, and it inquired as to whether that agreement was still in place. Defendant stated that the agreement was still in place but that he had not understood the agreement to cover any lesser included offense of aggravated assault on a peace officer, but rather he understood that it only prohibited him from

requesting the lesser included instruction on assault on a peace officer, as defined in Section 30-22-21. The prosecutor responded that he did not want to get into semantical games and that the whole point of the agreement was to avoid instructing the jury on all lesser included offenses. The district court denied the instruction on resisting, evading, or obstructing an officer, as it was contrary to the stipulated agreement.

Based on our review of the record, the language of the agreement between the prosecutor and Defendant was ambiguous at best. We will not construe the agreement to waive Defendant's right to request an instruction on the lesser included offense of resisting, evading, or obstructing an officer when it was not clear that he intended to relinquish his right to request that instruction. *See Crabtree*, 85 N.M. at 22-23, 508 P.2d at 1319-20 (concluding that the plaintiff did not stipulate to a matter where the record did not indicate that the plaintiff had waived his rights or had admitted to being guilty of certain conduct). We conclude that the only unambiguous part of the agreement was with regard to the lesser included offense of assault on a peace officer because the prosecutor used specific language identifying it as the lesser included instruction about which he was seeking a stipulation. Accordingly, Defendant only waived his right to seek an instruction on that specific lesser included offense. The

district court erred in denying Defendant's requested jury instruction on resisting, evading, or obstructing an officer.

**The District Court Did Not Err in Managing Closing Arguments**

Defendant contends that he was denied due process of law due to the manner in which the district court managed closing arguments. District courts have "broad discretion in managing closing argument." *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348. We review the district court's decision to limit Defendant's closing arguments for abuse of discretion. *Id.* ¶ 26.

Defendant argues that because the intent required for aggravated assault on a peace officer required the prosecutor to prove that Defendant acted with a "conscious wrongdoing," Defendant should have been able to argue that he did not have time to form the intent to aim his car at Officer Hengst between the time the vehicle fish-tailed and flipped around and the time he started driving again. The district court denied Defendant this opportunity, concluding that he was trying to make a specific intent argument that was not appropriate for a general intent crime.

We agree with the district court that allowing Defendant to argue that he was not conscious of the fact that he was threatening Officer Hengst with his vehicle would, in essence, require a specific frame of mind for a general intent crime. *See*

*State v. Cruz*, 86 N.M. 455, 457, 525 P.2d 382, 384 (Ct. App. 1974) (stating that aggravated assault is a general intent crime). In this case, Defendant's comments about the time period necessary to form an intent to scare Officer Hengst were irrelevant as they related to a specific intent which was not an element of the crime and could have confused the jury. The district court instead properly limited Defendant's closing statements about the time period necessary to form an intent to direct the vehicle toward Officer Hengst. Such a limitation was not an error as it was meant to keep the issue clear for the jury and because the district court is given discretion in managing closing arguments. *See State v. Chamberlain*, 112 N.M. 723, 729, 819 P.2d 673, 679 (1991) (stating that district courts are given wide discretion in controlling closing statements, and a reviewing court will not find reversible error absent an abuse of discretion).

Additionally, the district court did not err in allowing the prosecutor's statement that it did not matter what Defendant was thinking when he drove his vehicle within a few feet of Officer Hengst's car. That comment was not unrelated to the state of "conscious wrongdoing," which requires only general intent. And the statement was not a misstatement of law as Defendant suggests. *See Cruz*, 86 N.M. at 457, 525 P.2d at 384. As we have previously held, the UJI on general intent "sufficiently covers conscious wrongdoing in the words 'purposely does an act which the law declares to

be a crime.' A separate reference to conscious wrongdoing [is] not required." *State v. Sheets*, 94 N.M. 356, 366, 610 P.2d 760, 770 (Ct. App. 1980).

Here, the jury was instructed on general intent as set forth in UJI 14-141 NMRA. That instruction states:

> [T]he [S]tate must prove to your satisfaction beyond a reasonable doubt that [D]efendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime even though he may not know that his act is unlawful.

UJI 14-141 (alteration omitted).

Thus, the prosecutor's comment that he did not care what was in Defendant's mind when he drove his vehicle toward Officer Hengst was not error and did not fail to inform the jury about the state of "conscious wrongdoing" required to convict Defendant of the crime. Moreover, as this comment was not a misstatement of law, it does not amount to prosecutorial misconduct as Defendant also suggests.

**Statements Made by the Prosecutor Did Not Amount to Prosecutorial Misconduct**

Defendant also contends that certain comments made by the prosecutor during voir dire amounted to prosecutorial misconduct. As he did not preserve this argument below, we review for fundamental error. *Sosa*, 2009-NMSC-056, ¶ 35. On review of a claim for fundamental error, "[p]arties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a

11

fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). In order to find fundamental error based on the prosecutor's comments, the prosecutor's conduct must have created "a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted).

During voir dire, the prosecutor asked the potential jurors if they knew that the purpose of his job was not to seek a conviction, but rather "to seek justice." We have said that such a comment has the ability to pre-condemn a defendant as it infers that the prosecutor would not bring the case if he did not believe in Defendant's guilt. *See State v. Diaz*, 100 N.M. 210, 213-14, 668 P.2d 326, 329-30 (Ct. App. 1983) (noting that a prosecutor made "substantial reference to the authority he represented" during closing arguments and that the comments could have encouraged the jury to infer that the prosecutor would not try the case unless he believed in the defendant's guilt). However, Defendant here has only pointed to one statement from the prosecution that might have pre-condemned Defendant. The comment alone does not demonstrate that the prosecutor had a willful disregard for his conduct at trial. *See State v. Landers*, 115 N.M. 514, 517, 853 P.2d 1270, 1273 (Ct. App. 1992) (upholding a conviction

where a prosecutor's impermissible comment was brief and isolated), *overruled on other grounds by State v. Kerby*, 2005-NMCA-106, 138 N.M. 232, 118 P.3d 740; *see also Diaz*, 100 N.M. at 213-14, 668 P.2d at 329-30 (reversing a conviction when the prosecutor engaged in pronounced and persistent misconduct). Therefore, retrial is not barred. *See State v. Breit*, 1996-NMSC-067, ¶¶ 33-34, 122 N.M. 655, 930 P.2d 792 (stating that retrial may be barred when a prosecutor demonstrates "willful disregard" for the possibility that his conduct at trial "may lead to a mistrial or reversal").

**Voluntary Intoxication Is Not a Defense to a General Intent Crime**

Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985), Defendant argues that the district court erred in not instructing the jury on voluntary intoxication as a defense to the crime of aggravated assault on a peace officer. We review the denial of a jury instruction de novo, as it presents a mixed question of law and fact. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.

The crime of aggravated assault is a general intent crime. *Cruz*, 86 N.M. at 457, 525 P.2d at 384. Our Supreme Court has limited the use of intoxication defenses to specific intent crimes. *See State v. Campos*, 1996-NMSC-043, ¶ 46, 122 N.M. 148, 921 P.2d 1266. Thus, the district court did not err in denying Defendant's proposed

13

instruction on the defense of voluntary intoxication for the general intent crime of aggravated assault on a peace officer.

**We Do Not Reach Cumulative Error as We Have Reversed on Other Grounds**

We do not address Defendant's cumulative error argument as the argument only relates to his conviction of aggravated assault on a peace officer, and we have reversed that conviction on other grounds. *See State v. Baca*, 120 N.M. 383, 392, 902 P.2d 65, 74 (1995).

**CONCLUSION**

For the foregoing reasons, we reverse Defendant's conviction and remand to the district court for proceedings consistent with this opinion.

**IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**