The **HOBART MANUFACTURING COM-PANY, Plaintiff-Appellant,**

v.

The **FIDELITY & DEPOSIT COMPANY OF MARYLAND, Defendant-Appellee.**

**No. 16303.**

United States Court of Appeals
Sixth Circuit.

May 13, 1966.

William D. Ginn, Cleveland, Ohio, for appellant, Robert A. Bergquist, Thompson, Hine & Flory, Cleveland, Ohio, on the brief.

Walter A. Bates, Cleveland, Ohio, for appellee, Peter Reed, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, on the brief.

Before O'SULLIVAN, EDWARDS and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

Plaintiff-Appellant, The Hobart Manufacturing Company, appeals from a final judgment for Defendant-Appellee, The Fidelity & Deposit Company of Maryland, entered on a motion for a directed verdict at the close of the Plaintiff's evidence. The parties will be hereinafter referred to as Plaintiff and Defendant. D. Omer Tobias, an employee of Plaintiff, swindled from the Plaintiff approximately $400,000., therefore this appeal necessitates a determination of the extent of coverage of Clauses 1 and 1(a) of Defendant's depositor's forgery bond.

Plaintiff is one of the world's largest manufacturers of food preparation equipment. In addition to its domestic sales, Plaintiff exported its products to many foreign countries. Tobias worked in the export department and maintained all the records relevant to the export accounts. He was authorized to determine company creditors, to calculate amounts due them, and to requisition checks in payment of those creditors.

When Tobias determined the amount due to an export agent, or creditor, he would prepare a requisition form, sign his name, and send the form to the General Accounting Department. The General Accounting Department would prepare a two-part voucher check. The voucher check, together with the requisition form, was then sent to the Treasurer's Department for signature, after signature, the voucher check was returned to the General Accounting Department. The General Accounting Department retained the carbon copies for internal purposes, and the original voucher check was returned to Tobias in the Export Department. Tobias would then transmit the check, with its two halves intact, to the named payee.

The top half of the two-part voucher check was a negotiable check, containing the name of the Plaintiff as drawer, the First Troy National Bank and Trust Company, as drawee, the authorized signature of the drawer, S. T. Kunkel, the date, the amount, the words "Pay to the order of", and the check number. The check portion was attached to the voucher portion by a perforated line. Just below the perforated line were the words "Please detach before depositing". The voucher contained six columns. In the following order they were labeled: "Invoice No.", "Date", "Am't. of Invoice", "Deductions", "Discount", and "Net Amount".

In some instances rather than forwarding the check directly to the export agent, Plaintiff was instructed by the export agent to forward the check to a collecting agent. The check would then be made payable to the collecting agent, and Plaintiff would then charge the account of the export agent.

The eighty-nine checks involved in this suit were requisitioned by Tobias in the manner just described. However, the ostensibly legitimate debts to the export agents were in fact fictitious. The purported collection agents were in fact real persons, or an existing bank. In requisitioning these checks, Tobias did not request that they be payable directly to the export agent, but rather to a collecting agent. Tobias requisitioned twenty-six checks totaling $39,328.00 to Maude Feld as the named payee. He requisitioned thirty-one checks, totaling $176,202.44, to Thelma Harding as the named

payee. Tobias represented to the Plaintiff that Feld and Harding were authorized to receive the funds on behalf of the designated export agent. The voucher part named the export agent whose account was charged by Plaintiff.

Feld and Harding were in fact antique dealers from whom Tobias had purchased large quantities of antiques. Tobias would detach the voucher portion and send the checks to the named payees. By detaching the voucher, Tobias concealed from Feld and Harding the purpose for which the checks were drawn.

Each of the checks payable to Feld and Harding were endorsed by them, deposited for collection, and paid by the drawee bank. The account of the Plaintiff was then charged by the bank. These checks were thus used to discharge Tobias' personal obligations to Feld and Harding.

Tobias also requisitioned thirty-two checks, totaling $145,362.54 to the Guaranty Trust Company of New York, as the named payee. The voucher part stated the name of the export agent or individual whom Tobias represented as being authorized to receive the funds on behalf of the designated creditor. It was intended by the Plaintiff that the Guaranty Trust Company would deposit the funds to the account of the export agent named in the voucher. Again, only Tobias knew that the ostensibly legitimate debts were in fact fictitious. Tobias would either physically alter the voucher by crossing out the name of the export agent and inserting his own name, or he would detach the voucher and instruct the bank to deposit the funds to his own account. Each check was endorsed by the Guaranty Trust Company, and sent to the Troy Bank which paid the check and charged Plaintiff's account. Guaranty Trust Company, in turn credited the amount of the check to Tobias' account, and Tobias later withdrew the money. By altering or detaching the vouchers, Tobias succeeded in concealing from the Guaranty Trust Company the intended purpose of the Plaintiff in issuing the checks.

It is upon these facts that Plaintiff asserts its claim against the Defendant under the Defendant's depositor's forgery bond. The pertinent parts of this bond are as follows:

"In consideration of an agreed premium, Fidelity and Deposit Company of Maryland, a corporation of the State of Maryland, with its Home Office in the City of Baltimore, hereinafter referred to as Underwriter, hereby undertakes and agrees to idemnify [The Hobart Manufacturing Company] designated as Insured in Section 10 of this bond to the amount specified therein for losses sustained and discovered as hereinafter set forth through:

"Insuring Clauses

"1. FORGERY or ALTERATION of, on, or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by, or drawn upon the Insured, or made or drawn by one acting as agent of the Insured, or purporting to have been made or drawn as hereinbefore set forth, including

"(a) any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee whether or not such endorsement be a forgery within the law of the place controlling the construction thereof: * * *."

Plaintiff advances two theories under either of which it would be entitled to recover from the Defendant under the depositor's forgery bond. The Plaintiff first maintains that the unauthorized alteration of the voucher or the unauthorized detachment of the top half from the bottom half of the two-part voucher check before transmittal of the top half to the named payee constituted a "forgery or alteration" within the meaning of the Defendant's forgery bond. Plaintiff also maintains that the payees named were "fictitious" payees, within the meaning of Defendant's forgery bond.

There is no question that Tobias defrauded his employer. However, we are not dealing here with a fidelity bond, but with a depositor's forgery bond. The bond issued by Defendant requires a forgery or alteration "of, on, or in any check, draft, promissory note, bill of exchange or similar written promise, order or direction to pay a sum certain in money".

The instrument used by the Plaintiff was a two-part voucher check commonly used by many companies. The Plaintiff intended and instructed the payee to detach the voucher before depositing the check. The voucher served as a receipt, and also indicated the goods, services, or debts owed. This was the usual and intended purpose of the Plaintiff's two-part voucher checks.

However, in the eighty-nine checks here in evidence, the purported collection agent was named as the payee on the check portion, and the purported account to be credited was named on the voucher portion. Tobias' scheme was perfected by naming as the payee a real person or an existing bank intended by Tobias to receive the check, endorse it, and deposit it for collection. This was done in each case by the named payee. There was no forged endorsement, and there was no need to forge or alter the check. Because of the alteration or detachment of the vouchers, neither the payees, the bank, nor the Plaintiff discovered the fraud.

A check has been defined as an unconditional order in writing drawn on a bank, requiring the bank to pay on demand a sum certain in money to order or bearer. Former Ohio Revised Code Sections 1307.03 and 1305.02; State v. DeNicola, 163 Ohio St. 140, 126 N.E.2d 62 (1955). A check has also been referred to as a complete negotiable instrument. Royal Jewelers, Inc. v. Tanner, 95 Ohio App. 339, 108 N.E.2d 291 (1952).

We think this common and accepted definition of a check is the definition intended in the insuring clauses here in issue. We do not construe forgery or alteration of a check to include forgery or alteration of a voucher. The Plaintiff intended only that the top half, or the check half, would be negotiated. The voucher was attached by a perforation with the instruction to detach before depositing.

It is the negotiable check which determines the rights and obligations of the parties to the instrument. We have considered Plaintiff's contention that there is no issue of negotiability or of banking practices; that the only issue is what constitutes an alteration of the instrument within the meaning of Defendant's bond. In effect, Plaintiff's contention is that a different rule of construction than that generally accepted must be applied to language in a recovery bond. We disagree with this contention. We must give to the language contained in the bond the same meaning and effect that the language conveys in the general application of the rule of negotiability as to what constitutes a check. We cannot apply one rule of construction as to what constitutes a check in the channels of commerce and another rule of construction because the language is contained in a bond. The same fundamental principles of construction are involved in either case, and unless specific language to the contrary is contained in the bond instrument the same rule of construction that is applicable to the rules of negotiability must be applied. To hold that an alteration or unauthorized detachment of a voucher constitutes a forgery or alteration of a check would be to raise a serious question as to whether a check which initially had a perforated voucher attached thereto with instructions to detach before depositing would be accepted. The check travels as a "courier without luggage".

The essence of this clever scheme was fraudulently obtaining firm funds for an unauthorized purpose, not in falsifying negotiable paper. We can only conclude that forging or altering a voucher is beyond the risk intended to be covered by Defendant's bond, and consequently was not a forgery or alteration of a check.

Plaintiff next contends that the checks here in issue were made payable to fictitious payees. These checks were

drawn prior to the adoption of the Uniform Commercial Code in Ohio. In Ohio, prior to the adoption of the Commercial Code, an instrument made payable to the order of a fictitious or non-existent person, or a real person not intended to have an interest therein, and such fact was known to the person making it so payable, was deemed payable to bearer. Hartford Accident & Indemnity Co. v. Fifth-Third Union Trust Company, 111 F.2d 762 (C.A. 6, 1940); Former Ohio Revised Code Section 1301.11; 40 O.Jur. 2d, Negotiable Instruments, Section 49. Under this rule, the drawee bank would not sustain a loss in handling checks so payable, since the drawer's order would be complied with in making payment to the bearer, thus eliminating the possibility of forgery.

A check drawn to a fictitious payee is not payable to bearer where the non-existence of the payee was not known to the drawer. 10 Am.Jur.2d, Banks, Section 640; Callaway v. Hamilton National Bank of Washington, 90 U.S.App. D.C. 228, 195 F.2d 556 (1951). Prior to the Uniform Commercial Code, a check was not payable to bearer where an employee without authority to draw negotiable paper had his employer sign a check payable to a fictitious employee, and forged the employee's name. American Sash and Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034 (1932).

The test then, is not whether the payee is a fictitious creditor, as urged by the Plaintiff, but whether the drawer of the check intended the payee to have an interest in the check.

In this case, Tobias authorized the issuance of the checks, and S. T. Kunkel, authorized to do so, signed the checks. If Kunkel's intent controls, the checks were not payable to a fictitious payee since Kunkel did not know the payees were in fact fictitious, for he intended the payees to have an interest in the checks.

In Ohio, Tobias' intent would control, both before and after the adoption of the Uniform Commercial Code. Jones v. Peo-

ple's Bank Co., 95 Ohio St. 253, 116 N.E. 34 (1917) held the person authorized to request checks was the person making the checks payable to a fictitious payee. This was the minority rule. Beutel's Brannan Negotiable Instruments Law, Section 9(3), p. 317. Under the Uniform Commerical Code, Section 3-405, Ohio Revised Code Section 1303.41, an "indorsement by any person in the name of a named payee is effective if * * * (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

Tobias intended the named payees to receive possession of the checks. The named payees endorsed the checks, and obtained the proceeds. The proceeds were subsequently either deposited to Tobias' account, or used to discharge Tobias' personal obligations to the named payees. Under these circumstances, we cannot say the checks were payable to fictitious payees.

The judgment is affirmed.