[Cite as *Peters Family Farm, Inc. v. Sav. Bank*, 2011-Ohio-665.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

PETERS FAMILY FARM, INC.,      :
                               :
    Plaintiff-Appellant,       :    Case No. 10CA2
                               :
    vs.                        :    **Released: January 28, 2011**
                               :
THE SAVINGS BANK,              :    <u>DECISION AND JUDGMENT</u>
                               :    <u>ENTRY</u>
    Defendant-Appellee.        :
_____

<u>APPEARANCES:</u>

Jeffrey Easterday and Troy A. Callicoat, Barrett, Easterday, Cunningham & Eselgroth LLP, Dublin, Ohio, for Plaintiff-Appellant.

David M. Scott, Luper, Neidenthal & Logan, Columbus, Ohio, for Defendant-Appellee.
_____

McFarland, J.:

**{¶1}**    Plaintiff-Appellant, Peters Family Farm, Inc., appeals the decision of the Pickaway County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee, The Savings Bank. Appellant argues that the trial court erred in dismissing its claims against Appellee for conversion, wrongful payment of checks, and negligence. Because Appellant's claims present no genuine issues of material fact and Appellee is entitled to judgment as a matter of law, we overrule Appellant's assignments of error and affirm the decision of the court below.

## I. Facts

{¶2}    During the 1970s, Peters Family Farms ("Peters") began using Edgar Webb to manage its finances.  Some of the services Webb performed for Peters included preparing and filing tax returns and arranging tax payments.  Webb continued to perform these duties for Peters from the 1970s until his death in 2007.

{¶3}    During the probate of Webb's estate, it was discovered that he had defrauded Peters of a total of approximately $682,000 from 1997 until the time of his death.  Webb embezzled from Peters in the following manner: he would periodically tell Peters that it owed taxes to the IRS. Peters would then give Webb signed but otherwise blank corporate checks to pay the debt.  Each of these blank checks was drawn on a business checking account that Peters held with Huntington National Bank ("Huntington"). Webb would then fill out the checks and make the checks payable to the appellee in this case, The Savings Bank ("TSB").  Webb, who was a customer of TSB and held several accounts there, would then have TSB deposit the proceeds from Peters' checks into one of Webb's accounts. Webb also used the same fraudulent procedure with another bank, Kingston National Bank (" Kingston"), as the payee.

**{¶4}**    Upon discovering Webb's fraud, Peters filed a complaint naming Webb's estate, two businesses that Webb controlled, and TSB and Kingston as defendants.  Peters' complaint listed three counts relevant to the current appeal: conversion, wrongful payment of checks, and negligence. The trial court granted default judgment in favor of Peters as to Webb's estate and the two businesses he controlled.  In October 2009, TSB moved for summary judgment and Peters filed its memo contra.  In December 2009, the trial court granted TSB's motion for summary judgment and dismissed all of Peters' claims against TSB.  Peters then dismissed its claims against Kingston without prejudice and sought Rule 54(B) certification in order to immediately appeal the trial court's summary judgment decision.  The trial court granted Peters' Rule 54(B) motion and the current appeal followed.

II. Assignments of Error

First Assignment of Error

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DISMISSING ON SUMMARY JUDGMENT APPELLANT'S CONVERSION CLAIM AGAINST APPELLEE THE SAVINGS BANK.

Second Assignment of Error

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DISMISSING ON SUMMARY JUDGMENT APPELLANT'S WRONGFUL PAYMENT OF CHECKS CLAIM AGAINST APPELLEE THE SAVINGS BANK.

Third Assignment of Error

> THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DISMISSING ON SUMMARY JUDGMENT APPELLANT'S NEGLIGENCE CLAIM AGAINST APPELLEE THE SAVINGS BANK.

### III. Standard of Review

{¶5}     As each of Peters' assignments of error involve summary judgment, we first state the appropriate standard of review.  Appellate courts must conduct a de novo review when reviewing a trial court's summary judgment decision.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243; *Grafton v. Ohio Edison Co*., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.  As such, an appellate court reviews the trial court's decision independently and without deference to the trial court's determination.  *Brown v. Scioto Board of Commissioners* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶6}     A trial court may grant a motion for summary judgment only when 1) the moving party demonstrates there is no genuine issue of material fact; 2) reasonable minds can come to only one conclusion, after the evidence is construed most strongly in the nonmoving party's favor, and that conclusion is adverse to the opposing party; 3) and the moving party is entitled to judgment as a matter of law.  Civ.R. 56; see, also, *Bostic v.*

*Connor* (1988), 37 Ohio St.3d 144, 146; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66.

{¶7}    "[T]he moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case.  To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) * * *."  *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 1996-Ohio-107, 662 N.E.2d 264.  These materials include "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any."  Id. at 293; quoting Civ.R. 56(C). " * * * [O]nce the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party 'may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Foster v. Jackson Cty. Broadcasting, Inc.*, 4th Dist. No. 07CA4, 2008-Ohio-70, at ¶11, quoting Civ.R. 56(E).

IV. The Uniform Commercial Code and Common-Law

{¶8}    Before directly addressing Peters' three assignments of error, we first address a threshold issue, whether Ohio's Uniform Commercial Code provides the exclusive remedy when a party asserts causes of action

arising from transactions involving negotiable instruments.  The parties take opposing views of the matter, with Peters arguing that in addition to its claims under the UCC, it also has common-law causes of action against TSB, and TSB arguing that the UCC excludes all of Peters' common-law claims.

{¶9}     Webb's fraudulent transactions all involved checks with Huntington (with whom Peters held a corporate account) as the drawee-payor bank and TSB as the payee.  Ohio's version of the UCC is codified in R.C. 1301 et seq., and Chapter 1303 specifically addresses negotiable instruments, such as the checks involved in the current matter.

{¶10}   When common-law causes of action and statutory law are in conflict, the Supreme Court of Ohio has held the following: "Where the General Assembly has codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative." *Bolles v. Toldedo Trust Co.* (1944), 144 Ohio St. 195, 58 N.E.2d 381, paragraph thirteen of the syllabus, overruled in part on other grounds.  R.C. 1301.03 also provides guidance on the issue.  Pursuant to that section:

{¶11}   "Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code, the principals of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement their provisions."  R.C. 1301.03.

{¶12}   R.C. 1301.03 clearly shows that the Legislature's intent was not to preclude all common-law causes of action, even when the subject matter is one normally encountered under Ohio's UCC statute.  Instead, the common-law plays a supplementary role.  But it is also clear from R.C. 1301.03 that when the UCC's provisions clearly apply to an alleged claim, the statutory provisions displace, and thus exclude, any common-law claims. The fact that the UCC takes precedence over the common-law in such instances been widely recognized by Ohio courts.

{¶13}   In *Olympic Tile Ins. Co. v. Fifth Third Bank of Western Ohio*, 2nd Dist. No. 20145, 2004-Ohio-4795, the court stated that "although comprehensive, the statutory provisions [of the UCC] cannot predict and address every possible factual dispute regarding negotiable instruments. Accordingly, we are unwilling to conclude that the UCC supplants all

common law causes of action." Id. at ¶30. But the court cautioned that a party could not rely on the common-law to avoid the application of the UCC. "[W]e conclude that the UCC provides the exclusive remedy where the dispute is governed by its statutory provisions. Common law causes of action may not be raised to circumvent the UCC's rights, claims, and defenses where the statute applies." Id. at ¶31.

{¶14} Similarly, in *Natl. City Bank v. Citizens Natl. Bank of Southwest Ohio*, 2nd Dist. No. 20323, 2004-Ohio-6060, the court stated that "if parties are permitted to plead common law causes of action and thereby avoid the UCC, it will lose its reliability, uniformity, and certainty. * * * Thus, if the UCC with its numerous provisions governing rights and liabilities does not contain a provision that would provide relief to a party, the party may not avoid the UCC's limitations by raising a common law claim." Id. at ¶28. In reaching it's decision, the court relied to a large extent on the rationale expressed in *Amzee Corp. v. Comerica Bank-Midwest*, 10th Dist. No. 01AP-465, 2002-Ohio-3084, a case particularly relevant to the matter sub judice, and a case which both parties discuss in their briefs.

{¶15} In *Amzee*, an employee forged her employer's checks and then deposited them at her bank in order to make payments to her personal credit card account with the bank. The employer asserted five common-law causes

of action against the employee's bank, including, as does Peter's in the case

sub judice, negligence and conversion. The *Amzee* court found that allowing

the employer's common-law claims "would upset the comprehensive loss

allocation schemes provided by the UCC * * *." Id. at ¶49. Accordingly,

the court held that the employer was precluded from asserting common-law

causes of action as its claims were already covered by the UCC. Id. at ¶52.

See, also, *Dice v. White Family Cos*., 173 Ohio App.3d 472, 2007-Ohio-

5755, 878 N.E.2d 1105; *NCS Healthcare, Inc. v. Fifth Third Bank*, 8th Dist.

No. 85198, 2005-Ohio-3125.

{¶16} Accordingly, we find that the UCC is a party's exclusive

remedy when statutory provisions are applicable to the factual circumstances

of a given case. And only when no statutory provisions apply may a party

use common-law causes of action to supplement the provisions of the UCC.

With this in mind, we now examine Peters' three causes of action against

TSB.

## V. First Assignment of Error

{¶17} In its first assignment of error, Peters argues that the trial

court improperly dismissed its conversion claim against TSB. Ohio's UCC

conversion statute is provided in R.C. 1303.60:

{¶18}   "The law applicable to conversion of personal property applies to instruments. An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.  An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee."  R.C. 1303.60(A)

{¶19}   The trial court concluded that under R.C. 1303.60(A), the issuer of the check cannot maintain a cause of action for conversion because a check is not property of the drawer, but rather an obligation.  We agree with the trial court's conclusion.  Despite Peters' claims to the contrary, Ohio's version of the UCC clearly applies to the facts in the case sub judice and preempts any common-law claim.  R.C. 1303.60(A) unambiguously states that an issuer of an instrument cannot bring an action for conversion of the instrument.  Under R.C. 1303.1(A)(6), an "issuer" includes a drawer of drafts.  Here, it is undisputed that Peters was the drawer of the drafts in question.  And because Ohio's UCC statute does not allow the drawer of a draft to bring an action in conversion, Peters' claim against TSB fails as a

matter of law.  See, also, *W. Ohio Colt Racing Assn. v. Fast*, 3rd Dist. No. 10-08-15, 2009-Ohio-1303 at ¶18.  As such, we overrule Peters' first assignment of error.

## VI. Second Assignment of Error

{¶20}   Peters' second assignment of error states that the trial court improperly dismissed its wrongful payment of check claim.  In its brief, Peters states that this claim was based on The Supreme Court of Ohio's decision in *Master Chemical Corporation v. Inkrott* (1990), 55 Ohio St. 3d 23.  However, like the trial court, we believe that the ruling in that case does not apply to the case at hand.

{¶21}   In *Inkrott*, a company brought an action against a bank for wrongful payment of deposited checks.  An employee of the company, responsible for paying the company's tax obligations, embezzled funds by depositing corporate checks into an account he controlled.  In ruling against the bank, the trial court stated the following:

{¶22}   "In an action against a bank for wrongful payment of a check deposited, where the payee-bank presents the defense that it dealt with an individual knowing him to be a fiduciary, the drawer-depositor, in order to successfully maintain such action, must show that the bank had actual knowledge of the fiduciary's breach of the fiduciary obligation, or that the

bank had knowledge of such facts that its actions in paying the checks amounted to bad faith, or that the fiduciary was indebted to the bank and the funds were applied to that indebtedness. (R.C. 1339.09, construed and applied.)" Id. at the syllabus.

{¶23}   In reaching its decision, the *Inkrott* court applied R.C. 1339.09.  The modern version of R.C. 1339.09 is R.C. 5815.07.  That section reads as follows:

{¶24}   "If a check is drawn upon the principal's account by a fiduciary who is empowered to do so, the bank may pay the check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of the obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith."

{¶25}   "If such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of the obligation as fiduciary in drawing or delivering the check."  R.C. 5815.07.

{¶26}   As the trial court in the case sub judice noted, the first paragraph of R.C. 5815.07 pertains to the liability of the drawee-payor bank.

In the case sub judice, the drawee-payor bank is Huntington, with which

Peters held a corporate account.  The second paragraph of R.C. 5815.07

applies when the drawee-payor bank is also the payee.  As such, neither

paragraph applies to the matter at hand.  TSB was the payee in Webb's

fraudulent transactions, but it was Huntington who was always the drawee-

payor.  As the trial court noted, the *Inkrott* decision addressed a

circumstance dealing with a bank and its own customer.  In the case sub

judice, Peters was never a customer of TSB.  As the trial court stated, "[i]n

short, *Inkrott* and R.C. 5815.07 are inapposite because TSB was not the

drawee.

{¶27}   We further agree with the trial court that the recent Third

District case, *W. Ohio Colt Racing Assn. v. Fast*, supra, is highly relevant to

the instant matter.  In that case, an employee of WOCRA fraudulently

deposited checks drawn on WOCRA's account to a different bank, a bank

with which the employee, but not WOCRA, held an account.  WOCRA

urged the trial court to apply *Inkrott*, but the court declined.  The court did so

because it noted that the bank was the drawee only for the employee, not for

WOCRA.  Id. at ¶27.  In other words, the employee was a customer of the

bank, WOCRA was not.  The same holds true in the instant matter.  Webb

was a customer of TSB, but Peters was not.  As such, Peters cannot benefit

from the protection that the *Inkrott* decision provides.  Accordingly, we find

that the *Inkrott* decision is not applicable in the case sub judice.  As Peters'

second assignment of error is wholly based upon the *Inkrott* decision, the

assignment of error is overruled.

VII. Third Assignment of Error

{¶28}   In its third and final assignment of error, Peters asserts that the

trial court erred in dismissing its negligence claim.  Once again, we agree

with the trial court and find that Peters cannot maintain its common-law

negligence claim against TSB because that claim has been supplanted by

Ohio's UCC statute.

{¶29}   As the trial court noted, Peters raises only a common-law

negligence claim in its complaint.  The availability of common-law

negligence claims, and whether or not such claims are precluded by the

UCC, was specifically addressed in *Amzee Corp. v. Comerica Bank-*

*Midwest*, supra.  As previously stated, in *Amzee*, an employee fraudulently

deposited her employer's checks at her own bank in order to make payments

to her personal credit card account with the bank.  The employer filed a

complaint against the employee's bank for negligence.  Though noting that

if the UCC controlled, the employer had no redress, the court still held that

the UCC supplanted the employer's general, common-law negligence claim:

"If parties are permitted to avoid the remedies of the UCC and plead common law causes of action, the reliability, uniformity and certainty of the UCC disappears.  In many cases, a pleader could rely on a common law action to avoid the clear mandates of the UCC, virtually eliminating the objectives for adopting a uniform governing commercial transactions."  Id. at ¶48.  Consistent with the ruling in *Amzee*, we find that, given the facts and circumstances of this case, Peters' common-law claim for negligence has been supplanted by Ohio's UCC statute.

{¶30}   Peters also claims that even if its common-law negligence claim is barred, it still has a negligence claim under the UCC because of the application of  R.C. 1303.44.  That section, entitled Impostors; fictitious payees, states, in relevant part, the following:

{¶31}   "(B) If a person whose intent determines to whom an instrument is payable under division (A) or (B) of Section 1303.08 of the Revised Code does not intend the person identified as payee to have any interest in the instrument or if the person identified as payee of an instrument * * * ."

{¶32}   "(D) With respect to an instrument to which division (A) or (B) of this section applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the

instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."

{¶33}   Peters argues that R.C. 1303.44(D) created a duty of care on the part of TSB when it took the checks Webb presented (with TSB as the payee) and then allowed Webb to deposit the proceeds of those checks into one of his accounts.  However, we agree with the trial court that Peters is not entitled to the relief provided by R.C. 1303.44(D) because Peters does not qualify as a party under R.C. 1303.44(B).  For R.C. 1303.44(B) to apply, the drawer of a check must not intend for the payee to have any interest in it. Here, Peters was the drawer and TSB was the payee.  Further, the record shows that Peters was fully aware that TSB was the payee of the checks in question.  And TSB's designation as payee gave it an explicit interest in the checks.

{¶34}   As the trial court stated in its decision, "[Peters] trusted Webb's representations that making the checks payable to TSB was necessary to pay [Peters'] taxes, and further trusted Webb's representations as to the amounts payable. * * * The problem here was [Peters'] confidence in Webb, not the identification of TSB as payee.  Therefore [Peters'] may

not recover from TSB under R.C. 1303.44(D)."  See, also, *Hobart Mfg. Co. v. Fidelity & Deposit Co. of Md.* (C.A.Ohio 1966), 8 Ohio Misc. 274, 360 F.2d 453.  Accordingly, because Peters cannot maintain a claim of negligence against TSB, either in common-law or under the UCC, we overrule his third and final assignment of error.

## VIII. Conclusion

{¶35}   After reviewing the record below, we find that none of Peters' assignments of error are warranted.  The trial court correctly determined that under the circumstances of this case, Peters is unable to maintain a cause of action against TSB for conversion, wrongful payment of checks, or negligence.  Thus, because there is no genuine issue of material fact, and reasonable minds can come to but one conclusion, and TSB is entitled to judgment as a matter of law, we affirm the trial court's decision to grant summary judgment.

                                                                  **JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J. and Sadler, J[1].: Concur in Judgment and Opinion.


For the Court,


BY: _____
Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

---

[1] Judge Lisa L. Sadler from the Tenth District Court of Appeals sitting on the Fourth District Court of Appeals by appointment of the Supreme Court of Ohio.